IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| MAXON, LLC<br><br>        Plaintiff,<br><br>   vs.<br><br>FUNAI CORPORATION, INC.<br><br>        Defendant. | **Case No. 1:16-cv-7685**<br>(Coordinated Lead Case 1:16-cv-06840)<br><br>Hon. Gary Feinerman |

**DEFENDANT'S REPLY MEMORANDUM IN SUPPORT OF ITS
MOTION TO DISMISS (DKT. NO. 21)**

Defendant, Funai Corporation, Inc. ("Funai") submits this Reply Brief in Support of its Motion to Dismiss (Dkt. No. 21). Plaintiff, Maxon, LLC ("Maxon") has failed to respond to numerous issues raised in Funai's Motion and expressly conceded material elements of Funai's Motion. For the reasons set forth in its opening brief and herein, Funai respectfully requests that its Motion to Dismiss be granted.

**I.    MAXON HAS ADMITTED AND/OR CONCEDED ALL BUT ONE ELEMENT OF FUNAI'S MOTION**

Maxon has expressly admitted and/or failed to address and thereby conceded all but one element of Funai's Motion. The following points are undisputed:

1) Maxon does not contest, and therefore conceded, patent eligibility is a threshold question of law that is properly decided in the context of a Rule 12 Motion;

2) Maxon does not contest, and therefore conceded, the claims addressed in Funai's Motion are representative, thereby waiving any argument to the contrary;[1]

---

[1] *See, e.g., Affinity Labs of Texas, LLC v. DirecTV, LLC*, 838 F.3d 1253, n.1 (Fed. Cir. 2016); *Electric Power Grp., LLC v. Alstrom S.A.*, 830 F.3d 1350, 1352 (Fed. Cir. 2016)

1

3) Maxon expressly admits that the claims of all four Patents-in-Suit are directed to an abstract idea (*see* Maxon Opposition ("Opp.") at 9 ("Here, ***the patent claims are directed to the abstract idea of reversing a trend of centralized service management***, allowing the consumer to control through decentralized management the services that the consumer chooses to enjoy across her various devices.") (emphasis added)); and

4) Maxon does not dispute the fact that the claims of the four Patents-in-Suit preempt the entire field of the abstract idea and, therefore, concedes the claims preempt that abstract idea.

Given the foregoing and in particular that the claims are directed to abstract ideas under *Alice* Step 1, the only question left for the Court is whether, under *Alice* Step 2, the claims include some inventive concept to render the admittedly patent ineligible abstract idea into a patent eligible invention. Funai respectfully submits they do not.

## II. THE TWO-PART *ALICE* TEST

To assess patent eligibility, the Supreme Court has formulated a two-part test. At step one, the court must evaluate the claims "[o]n their face" to determine to which "concept" the claims are "drawn." *Alice*, 134 S. Ct. at 2356. This first "'abstract idea' step of the inquiry calls upon us to look at the 'focus of the claimed advance over the prior art' to determine if the claim's 'character as a whole' is directed to excluded subject matter." *Affinity Labs*, 838 F.3d at 1257. If the court determines the claims are drawn to an abstract idea, the court must then determine if the claims include an inventive concept which can salvage the claims from an otherwise patent ineligible abstract idea. *Alice*, 134 S. Ct. at 2356; *Mayo Collaborative Servs. v. Prometheus Labs., Inc.*, 132 S. Ct. 1289, 1297 (2012). In *Alice*, the Supreme Court described an "inventive concept" as "an element or combination of elements that is 'sufficient to ensure that the patent in practice amounts to significantly more than a patent upon the [ineligible concept] itself.'" *Alice*, 134 S. Ct. at 2355

(quoting *Mayo*, 132 S. Ct. at 1294) (alteration in original); *see also*, *Synopsys, Inc. v. Mentor Graphics Corporation*, 839 F.3d 1138, 1151 (Fed. Cir. 2016).

### A. Maxon Admits the Asserted Claims are Directed to an Abstract Idea

In its opposition, Maxon freely admits the asserted claims are directed to an abstract idea. (*See, e.g.,* Opp. at 9-11).

> Here, ***the patent claims are directed to the abstract idea*** of reversing a trend of centralized service management, allowing the consumer to control through decentralized management the services that the consumer chooses to enjoy across her various devices.

(Opp. at 9) (emphasis added). As such, the Court need not engage in *Alice* Step 1 – the claims are admittedly drawn to a patent ineligible abstract concept.[2] The focus now shifts to *Alice* Step 2.

### B. Maxon Fails to Prove the Asserted Claims Include an Inventive Concept

The Federal Circuit has characterized the *Alice* Step 2 inquiry as follows:

> The "inventive concept" step requires us to ***look with more specificity at what the claim elements add***, in order to determine "whether they identify an 'inventive concept' in the application of the ineligible subject matter" to which the claim is directed.

*Affinity Labs*, 838 F.3d at 1258 (emphasis added). As Funai demonstrated in its Memorandum in Support of its Motion to Dismiss ("Mem."), there is no inventive concept which transforms the claimed abstract idea into a patent eligible invention. *See,* Mem. at 7-10 and 13-15. In response, Maxon relies upon several arguments, none of which are legally sufficient to salvage the patent ineligible claims under *Alice* Step 2.

---

[2] Maxon's reliance on *Enfish* (Opp. at 9-10) is irrelevant in light of Maxon's admission. The quoted passage of the *Enfish* decision relates to the *Alice* Step 1 inquiry – *i.e.,* "[T]he first step in the *Alice* inquiry . . . ." Having admitted the claims are directed to an abstract idea, there is no need to conduct the *Alice* Step 1 inquiry since its only purpose is to determine ***if*** the claims are directed to an abstract idea.

3

### 1. **Maxon's Reliance on the Specification is Clear Error**

Maxon's attempt to rely upon the specification to save its admittedly abstract claims is of no avail. *The analysis under § 101 is properly focused on the claims, rather than on the specification*. *Ultramercial, Inc. v. Hulu*, LLC, 772 F.3d 709, 714 (Fed. Cir. 2014); *Synopsys*, 839 F.3d at 1149 ("The § 101 inquiry must focus on the language of the Asserted Claims themselves."); *see also Content Extraction & Transmission LLC v. Wells Fargo Bank, Nat'l Ass'n*, 776 F.3d 1343, 1346 (Fed. Cir. 2014) ("We focus here on whether the claims of the asserted patents fall within the excluded category of abstract ideas."), *cert. denied*, — U.S. —, 136 S. Ct. 119 (2015).

The Federal Circuit's holdings directly rebut Maxon's argument: "the complexity of the implementing software or the level of detail in the specification does not transform a claim reciting only an abstract concept into a patent-eligible system or method." *Accenture Global Servs. GmbH v. Guidewire Software, Inc.*, 728 F.3d 1336, 1345 (Fed. Cir. 2013). Indeed, Maxon's argument was rejected by the Federal Circuit on very similar facts:

> Regarding Accenture's argument concerning the complexity of the specification, including the specification's detailed software implementation guidelines, *the important inquiry for a § 101 analysis is to look to the claim*. "When the insignificant computer-based limitations are set aside from those claims that contain such limitations, *the question under § 101 reduces to an analysis of what additional features remain in the claims*." *Bancorp,* 687 F.3d at 1279 (citing *Mayo,* 132 S. Ct. at 1297). The limitations of claim 1 are essentially a database of tasks, a means to allow a client to access those tasks, and a set of rules that are applied to that task on a given event. Although the specification of the '284 patent contains very detailed software implementation guidelines, the system claims themselves only contain generalized software components arranged to implement an abstract concept on a computer. The limitations of the system claims of the '284 patent do not provide sufficient additional features or limit the abstract concept in a meaningful way. *In other words, the complexity of the implementing software or the level of detail in the specification does not transform a claim reciting only an abstract concept into a patent-eligible system or method*.

*Id.* (emphasis added); *see also*, *Synopsys,* 839 F.3d at 1149 ("complex details from the specification cannot save a claim directed to an abstract idea that recites generic computer parts");

4

*Accenture*, 728 F.3d at 1244-45 ("Having identified the abstract idea of the claim, we proceed with a preemption analysis to determine whether "additional substantive limitations ... narrow, confine, or otherwise tie down the claim so that, in practical terms, it does not cover the full abstract idea itself." (citations omitted)); *Ultramercial,* 722 F.3d at 1344 ("[T]he relevant inquiry is whether a claim, as a whole, includes *meaningful* limitations restricting it to an application, rather than merely an abstract idea." (citations omitted)).

Thus, the primary thrust of Maxon's opposition is legally irrelevant. The issue is not whether the **specification** provides an inventive concept – rather, the question is whether there are "meaningful limitations" ***in the claim*** that evidence an inventive concept. As discussed in the following section, there are none.

### 2. The Asserted Claims Lack any Meaningful Limitations

There is no inventive concept which transforms the claimed abstract ideas into a patent eligible invention. Indeed, "it is clear from the face of the patent that it is directed to 'the use of conventional or generic technology in a nascent but well-known environment, without any claim that the invention reflects an inventive solution to any problem presented by combining the two.'" *Nextpoint, Inc. v. Hewlett Packard Co*., Case. No. 15-C-8850-EEB (N.D. Ill, June 8, 2016), Slip. Op. at 12, citing *TLI Commc'ns*, 823 F.3d at 612.[3] Nor do the claims (or the specification) disclose any new component or feature whose particular use is the reason for the alleged superiority over the prior art. *Nextpoint,* Slip Op. at 11. Accordingly, the claims are patent ineligible under § 101.

Maxon concedes the Asserted Claims "invoke known computer components." (Opp. at 10). Moreover, Maxon does not assert that those known computer components are used for any

---

[3] A copy of slip opinion in *Nextpoint, Inc. v. Hewlett Packard Co*., Case. No. 15-C-8850-EEB (N.D. Ill, June 8, 2016) was submitted as Exhibit 9 to Funai's motion (Dkt. No. 21).

5

purpose other than their known and ordinary functions. Although generic components can sometimes work together inventively, a combination of such components cannot transform an abstract idea into patentable subject matter where each component is used only for its long-established and inherent purpose. *Alice* at 2360 (The claimed combination of hardware was used only for "basic calculation, storage, and transmission functions."). The recited "identifiers," "routing information," "signals" and "content" are intangible information. *See, e.g., Digitech*, 758 F.3d at 1350. "Purely functional and generic" components cannot render the claims patent eligible. *Alice*, 134 S. Ct. at 2360. Generic computer components such as a "network" and "database" do not satisfy the inventive concept requirement. *Mortgage Grader*, 811 F.3d at 1324–25; *see also, buySAFE*, 765 F.3d at 1355 (sending information over a network is "not even arguably inventive"); *Accenture Global*, 728 F.3d at 1345 ("The limitations of claim 1 are essentially a database of tasks, a means to allow a client to access those tasks, and a set of rules that are applied to that task on a given event. Although the specification of the [patent-in-suit] contains very detailed software implementation guidelines, the system claims themselves only contain generalized software components arranged to implement an abstract concept on a computer.").

Instead, Maxon argues that the inventive concept is imparted because the patent teaches "*how*" the claimed abstract idea is implemented. This argument, however, fails as well.

First, as stated above, Maxon's reliance on the disclosure of the specification is in error because "the complexity of the implementing software or the level of detail in the specification does not transform a claim reciting only an abstract concept into a patent-eligible system or method." *Accenture*, 728 F.3d at 1345.

Second, contrary to Maxon's assertion (Opp. at 12), the claims of the Patents-in-Suit **do not** teach "*how* the device may be programmed to store information about itself and its owner's

6

services, and *how* to communicate with the service provider to activate and deactivate services shared across multiple devices within her personal network." To the contrary, they recite nothing more than the desired result without any teaching of "*how*" to accomplish their alleged desired goal(s). As in *Affinity Labs*, "[t]here is nothing in [the claim] that is directed to *how* to implement" the abstract idea; rather "the claim is drawn to the idea itself." 838 F.3d at 1258 (emphasis original).

This failing is perhaps best illustrated with respect to the claimed "logic" elements (*see, e.g.,* "logic in communication"—Ex. 1 at Claim 8; "management logic"—Ex. 5 at Claim 6 and Ex. 6 at Claim 6; and "input/output logic"—Ex. 7 at Claim 8).[4] The claim language "logic" is defined in the specification in purely functional terms:

> "Logic", as used herein, includes but is not limited to **hardware, firmware, software and/or combinations of each to perform a function(s) or an action(s), and/or to cause a function or action from another component**. For example, based on a desired application or needs, logic may include a software controlled microprocessor, discrete logic such as an application specific integrated circuit (ASIC), a programmed logic device, memory device containing instructions, or the like. Logic may also be fully embodied as software.

(*See*, Ex. 1 at 2:35-44 (emphasis added); *see also*, Mem. at 6-8). Thus, even the function(s) are nothing more than the abstract concepts of being *functional*. The same holds true for the other "tangible elements" – *i.e.,* the claimed "computer-readable medium for storage" is used to store data, the claimed "processor" is used to process information, the claimed "databases" are used to hold data, the claimed "user interface" includes admittedly conventional keyboards, keypads, etc. (*see*, Ex. 1 at 6:25-31), and the claimed "transceiver" is used to transmit and receive information with the specification admitting the "transceiver" component is generic – comprised of conventional components, performing conventional functions, in a conventional manner. (Ex. 4

---

[4] All exhibits are those submitted in support of Funai's motion (Dkt. No. 21) unless otherwise indicated.

at 5:10-25). The patent in *Alice* also included system claims, which recited additional generic hardware such as "a 'data processing system' with a 'communications controller' and 'data storage unit.'" *Id.* at 2360. Those hardware components also failed to supply an inventive concept, because they were "purely functional and generic."[5] *Id.* Any patent draftsman could add similar components to an abstract idea. But that would not make a difference. "[P]atent eligibility [does not] 'depend simply on the draftsman's art.'" *Id.* (quoting *Mayo*, 132 S. Ct. at 1294); *see also, Parker v. Flook*, 437 U.S. 584, 593 (1978).

### 3. The Alleged Novelty of the Claims is Irrelevant As a Matter of Law

Maxon, at several points in its Opposition, appears to emphasize the alleged novelty. *See, e.g.*, Opp. at 9 ("the novel result"), 10 ("This was a novel idea"), 10 at heading ("the novel result"), and 10 discussing *BASCOM* ("to achieve a novel result"). The Supreme Court, however, has repeatedly stated that a claim's novelty is insufficient to establish patent-eligibility; to the contrary, novelty is assumed. *Flook*, 437 U.S. at 587, 592-95 (a claim to an abstract idea is invalid even though "we assume that respondent's formula is novel and useful"); *Diamond v. Diehr*, 450 U.S. 175, 190 (1981) (novelty is "wholly apart from whether the invention falls into a category of statutory subject matter" under § 101). Indeed, the "search for a § 101 inventive concept is … distinct from demonstrating § 102 novelty." *Synopsys*, 839 F.3d at 1151. This is especially true where the alleged novelty is attributable to the abstract idea itself, rather than to its specific application. *Mayo*, 132 S. Ct. 1297 (even a truly groundbreaking abstract idea, like Einstein's theory of relativity, cannot make a claim patent eligible); *Genetic Techs.*, 2016 WL 139573, at *6; *buySAFE*, 765 F.3d at 1352 (naked ideas are unpatentable "no matter how '[g]roundbreaking,

---

[5] The hardware limitations were "purely functional" because they were defined solely by their functions and therefore did not require any specific structure. Such "limitations" do not render an abstract idea patent-eligible. *Alice*, 134 S. Ct. at 2360.

innovative, or even brilliant'" they may be). And, of course, novelty is irrelevant if it results from the use of generic computer components performing routine computer functions. *Ultramercial*, 772 F.3d at 716 (the fact that a method was "not previously employed in this art is not enough—standing alone—to confer patent eligibility upon the claims").

Like the forgoing examples, the claims at issue are not limited to any specific application or device. To the contrary, as admitted by Maxon, they are drawn to a generic abstract concept of controlling any "services" on any "device." (*See, e.g.,* Opp. at 11).

### 4. Maxon has Conceded the Issue of Preemption

The preemption concern underlying § 101 is a relative one—namely, whether a claim would tend to impede more innovation than it would promote. *Mayo*, 132 S. Ct. at 1303. Claims like Maxon's, which make no contribution whatsoever to the public store of knowledge, and which seek to remove from the public domain such basic tools of technical and economic work whenever used on any computer and any network, certainly raise such concerns. The issue of preemption is said to be at the heart of the § 101 analysis.

> In the case of abstractness, the court must determine whether the claim poses "any risk of preempting an abstract idea." *Id*. To do so the court must first "identify and define whatever fundamental concept appears wrapped up in the claim." *Id*.; *see also Ultramercial*, 722 F.3d at 1354–45 (Lourie, J., concurring) (same). Then, proceeding with the preemption analysis, the balance of the claim is evaluated to determine whether "additional substantive limitations ... narrow, confine, or otherwise tie down the claim so that, in practical terms, it does not cover the full abstract idea itself." *CLS Bank*, 717 F.3d at 1282 (citing *Mayo*, 132 S. Ct. at 1300; *Bilski*, 130 S. Ct. at 3231; *Diamond v. Diehr*, 450 U.S. at 187, 101 S. Ct. 1048).

*Accenture*, 728 F.3d at 1341.

Funai affirmatively raised this seminal § 101 issue in its Memorandum. (*See, e.g.*, Mem. at 6, citing *Nextpoint,* Slip Op. at 12). Maxon's Opposition, however, is silent on the issue of preemption. As such, preemption is conceded, thereby further supporting the conclusion the claims are patent ineligible under § 101.

9

### 5. *Enfish*, *BASCOM* and *DDR Holdings* are Inapposite

Maxon's reliance on *Enfish, BASCOM* and *DDR Holdings* (Opp., *passim*), is misplaced. The Federal Circuit has emphasized these cases are limited to inventions "necessarily rooted in computer technology" and directed to "improvement in computer capabilities." *DDR Holdings, LLC v. Hotels.com, L.P.*, 773 F.3d 1245, 1257 (Fed. Cir. 2014). The Federal Circuit has recently rejected broad reliance on *DDR Holdings* where, as here, the claims do not "attempt to solve 'a challenge particular to the Internet.'" *TLI Commc'ns*, 823 F.3d 607, 613 (Fed. Cir. 2016); *Intellectual Ventures I LLC v. Capital One Bank (USA)*, 792 F.3d 1363, 1371 (Fed. Cir. 2015) ("because the patent claims at issue did not 'address problems unique to the Internet, ... DDR* has no applicability.'"). *BASCOM*, like *DDR*, focuses on a problem unique to the Internet. *See generally*, *BASCOM Global Internet Servs. v. AT&T Mobility LLC*, 827 F.3d 1341 (Fed. Cir. 2016). The Federal Circuit has also recently explained why the holdings of *BASCOM* and *Enfish* are not applicable to the type of issues presented in this case.

> The present case is different [from *BASCOM* and *Enfish*]: the focus of the claims is not on such an improvement in computers as tools, but on certain independently abstract ideas that use computers as tools.

*Electric Power Grp., LLC v. Alstrom S.A.*, 830 F.3d 1350, 1354 (Fed. Cir. 2016); *see also*, *TLI Commc'ns,* 823 F.3d at 612 (distinguishing *Enfish*, "the claims here are not directed to a specific improvement to computer functionality."); *Affinity Labs I*, 2016 WL 5335501, *6 ("As in *DDR Holdings*, the focus of the claims in *Enfish* was on 'an improvement to computer functionality itself, not on economic or other tasks for which a computer is used in its ordinary capacity.'" (citations omitted)). And most recently, on October 11, 2016, the Federal Circuit once again clearly limited the applicability of *Enfish*,

> Moreover, the claims here are not like those we found patent eligible in Enfish. In that case, we explained that the claims were "specifically directed to a *self-referential* table for a computer database." Enfish, LLC v. Microsoft Corp., 822

10

> F.3d 1327, 1337 (Fed. Cir. 2016). **The claims were thus "directed to a specific improvement to the way computers operate," rather than an abstract idea implemented on a computer.** *Id.* at 1336. The claims here, in contrast, are not directed to an improvement in the way computers operate, nor does FairWarning contend as much. While the claimed system and method certainly purport to accelerate the process of analyzing audit log data, the speed increase comes from the capabilities of a general-purpose computer, rather than the patented method itself. *See* Bancorp Servs., L.L.C. v. Sun Life Assurance Co. of Can. (U.S.), 687 F.3d 1266, 1278 (Fed. Cir. 2012) ("[T]he fact that the required calculations could be performed more efficiently via a computer does not materially alter the patent eligibility of the claimed subject matter."). Thus here, as in *Electric Power,* **"the focus of the claims is not on ... an improvement in computers as tools, but on certain independently abstract ideas that use computers as tools."** Elec. Power, 830 F.3d at 1354.

*FairWarning IP, LLC v. Iatric Systems, Inc.*, 839 F.3d 1089, 1094-95 (Fed. Cir. 2016) (emphasis added).

The present claims do not improve any computer capabilities. At most, they include a generic computer (*i.e.,* a processor) which is used for its long-established and inherent purpose. *Alice,* 134 S. Ct. at 2360. Even if Maxon were to allege that processing was somehow inventive, the argument still fails since the claims fail to provide any specific "process" beyond the generic recitation of the desired functionality. "[A]fter Alice, there can remain no doubt: recitation of generic computer limitations does not make an otherwise ineligible claim patent-eligible." (*DDR Holdings,* 773 F.3d at 1256, citing *Alice*, 134 S. Ct. at 2358). "The bare fact that a computer exists in the physical rather than purely conceptual realm 'is beside the point.'" (*Id.*). The Asserted Claims are not directed to any improvement in computer or Internet capabilities. As such, *Enfish*, *BASCOM* and *DDR Holdings* are inapposite. *See, Visual Interactive Phone Concepts, Inc. v. U.S. Cellular Corp.*, Slip Op. at 14 (J. Hart – N.D. Ill. 1-11-cv-05289-195) (Nov 15, 2016).

> 6. **The Asserted Patents Define Claim Terms Very Broadly, Thereby Supporting Maxon's Admission that the Claims are Directed to Abstract Ideas**

The specifications of the asserted patents define many of the claim terms very broadly. For example, in the '194 Patent, the claim term "logic" is defined in the specification in purely

functional terms; it can be a combination of hardware and software (*e.g.*, a computer) or "fully embodied as software" so long as it "perform[s] a function(s) or an action(s), and/or to cause a function or action from another component" (Ex. 1 at 2:35-44) and the term "user" is defined in the patent as including "but is not limited to one or more persons, software, computers or other devices, or combinations of these." (Ex. 1 at 3:65-67). Similarly, the '649, '671 and '160 asserted patents define claim terms extremely broadly. When claim terms are so defined by the patentee, the Federal Circuit applies those definitions to those terms without exception:

> "[T]he inventor's written description of the invention, for example, is relevant and controlling insofar as it provides ***clear lexicography*** ..." C.R. Bard, Inc. v. U.S. Surgical Corp., 388 F.3d 858, 862 (Fed. Cir. 2004) (emphasis added). For example, in 3M Innovative Properties Co. v. Avery Dennison Corp., we held that the patentee acted as its own lexicographer when the specification stated: "'Multiple embossed' means two or more embossing patterns are superimposed on the web to create a complex pattern of differing depths of embossing." 350 F.3d 1365, 1369, 1371 (Fed. Cir. 2004).

*Thorner v. Sony Comp. Entertainment America LLC*, 669 F.3d 1362, 1365-66 (Fed. Cir. 2012).

Accordingly, the definitions applied by Funai are not out of context as claimed by Maxon (Opp. at 13). Instead, they are the very definitions provided by the patentees and which are binding. Application of these broad definitions that only describe generic functionality and that effectively cover any solution to an identified problem results in a claim that is frequently held ineligible. *Nextpoint, Slip Op.* at p. 17.

### III. CONCLUSION

For the reasons stated in its opening brief and herein, Funai respectfully requests its Motion to Dismiss be granted.

December 5, 2016

Respectfully submitted,

/s/ Marc R. Labgold
Marc R. Labgold, Ph.D. (*pro hac vice*)
DC Bar No. 474969
  mlabgold@labgoldlaw.com
Patrick J. Hoeffner (*pro hac vice*)
New York Bar No. 2801462
  phoeffner@labgoldlaw.com
LAW OFFICES OF MARC R. LABGOLD, P.C.
12005 Sunrise Valley Drive, Suite 203
Reston, Virginia 20191
Tel: (703) 901-8860
Fax: (877) 401-9955

/s/ Daniel B. Meyer
Daniel B. Meyer
Illinois ARDC No. 6237685
  dmeyer@meyerlex.com
MEYER LAW GROUP LLC
30 North LaSalle Street, Suite 1410
Chicago, Illinois 60602
Tel: (312) 265-0565
Fax: (312) 888-3930
(*Designated Local Counsel*)

***Attorneys for Defendant***
***Funai Corporation, Inc.***

## **CERTIFICATE OF SERVICE**

I, Daniel B. Meyer, an attorney, hereby certify that on December 5, 2016, a true and correct copy of the foregoing **DEFENDANT'S REPLY MEMORANDUM IN SUPPORT OF ITS MOTION TO DISMISS** was filed using the Court's CM/ECF system, thereby serving a copy of the same on all counsel of record.

*/s/ Daniel B. Meyer*

Daniel B. Meyer
Illinois ARDC No. 6237685
dmeyer@meyerlex.com
MEYER LAW GROUP LLC
30 North LaSalle Street, Suite 1410
Chicago, Illinois 60602
Tel: (312) 265-0565
Fax: (312) 888-3930
(*Designated Local Counsel*)